UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ISSAM HAMAMA,

    Defendant.
_____/

Case No. 08-20314

Honorable Nancy G. Edmunds

**ORDER GRANTING GOVERNMENT'S MOTION FOR PROTECTIVE ORDER [22]**

This matter came before the Court on the Government's motion for a protective order. For the reasons stated below and at the *in camera, exparte* hearing on the Government's motion, the Government's motion is GRANTED.

**I.  Background**[1]

Beginning in at least 1991, Defendant agreed to operate in the United States as an agent for the government of Iraq, which was ruled at the time by Saddam Hussein. Defendant's activities included collecting information about groups in the United States that were opposed to the regime of Saddam Hussein and reporting that information to officers of the Iraqi Intelligence Service ("IIS") located in Washington. D.C. and at the United Nations in New York, New York. In exchange for his reporting, Defendant received monetary payments from the IIS.

---

[1] This information is from the Government's brief [Doc. Entry No. 22].

Following the invasion of Iraq in 2003, United States military forces operating in Iraq found documents that belonged to the IIS. Some of these documents detailed Defendant's activities, including payments that were made to him by the IIS. In addition, an opposition group in Iraq found IIS documents and provided them to the United States. Some of these documents also pertain to Defendant.

After the invasion of Iraq, Defendant sought employment as a translator for United States military forces in Iraq. In order to obtain this employment, Defendant was required to complete an application for security clearance. In the application, Defendant stated "no" in response to a question asking whether he had ever had "any contact with a foreign government . . . ." In June and September, 2006, Defendant was interviewed by agents from the Federal Bureau of Investigation ("FBI"). During the interviews, Defendant acknowledged providing the IIS with information about opposition groups, but claimed that he was never an IIS source and never received any payments from the IIS.

On June 3, 2008, a grand jury returned a four-count indictment charging Defendant with: one count of conspiracy to act as an agent of a foreign government, in violation of 18 U.S.C. §§ 371, 951; two counts of making false statements on security clearance application forms, in violation of 18 U.S.C. § 1001; and one count of making false statements during an interview with FBI agents, in violation of 18 U.S.C. § 1001. The indictment was unsealed on November 24, 2008.

Subsequently, the government provided Defendant with virtually all discoverable material, including copies of IIS documents pertaining to Defendant, a video tape of Defendant speaking at an IIS party, reports of investigation written by the FBI, as well as other documents and records.

On December 22, 2009, the government filed a motion for a protective order prohibiting disclosure of certain classified information to the defense during discovery. The government claims that there exists "a small amount of relevant classified information" that it seeks to preclude from discovery because "the classified information will not be used by the government at trial, is not exculpatory, is subject to the government's classified information privilege, or is otherwise not discoverable." (Gov't Mot. at 3-4.) This matter is now before the Court.

## II. Legal Principles

### A. Statutory Authority and Fed. R. Crim. P. 16(d)(1)

The motion is brought pursuant to Fed. R. Crim. P. 16(d)(1) and § 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C.A. App. 3 § 4.

Fed. R. Crim. P. 16(d)(1) addresses protective orders and provides that:

At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect ex parte. If relief is granted, the court must preserve the entire text of the party's statement under seal.

Sections 3 and 4 of CIPA address protective orders and discovery.

Section 3 of CIPA, titled "Protective orders," provides that:

Upon motion of the United States, the court shall issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case in a district court of the United States.

18 U.S.C.A. App. 3 § 3 (West 2000).

Section 4 of CIPA, titled "Discovery of classified information by defendants," provides that:

> The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone. If the court enters an order granting relief following such an ex parte showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

18 U.S.C.A. App. 3 § 4 (West 2000).

"Classified information" is defined in CIPA as "information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security . . . ." 18 U.S.C.A. App. 3 § 1(a) (West 2000).

### B.  Relevant Case Law

Although the Sixth Circuit has not directly and fully addressed the applicable procedures required when the Court is confronted with this type of Rule 16(d)(1)/§ 4 CIPA motion, various other Circuit Courts of Appeal and United States District Courts have done so, setting forth the following legal principles and standards.

### 1.  General Principles

It is well settled that the government may move *in camera* and *ex parte* for a protective order restricting discovery, *see United States v. Mejia*, 448 F.3d 436, 457-58 (D.C. Cir. 2006); *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988); *United States v. Pringle*, 751 F.2d 419, 427 (1st Cir. 1984); *United States v. Abujihaad*, No. 3:07,CR 57 (MRK), 2007 WL 2972623, *3 (D. Conn. Oct. 11, 2007); *United States v. Libby*, 429 F. Supp.2d 46, 47 (D. D.C. 2006); and that the Court may hold *in camera* and *ex parte*

hearings on such motions, *see United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998).

More important here is how the federal courts have answered the question concerning what standard the Court applies when "determining what relevant classified information a criminal defendant is entitled to receive during discovery." *Aref*, 533 F.3d at 76. In *Aref*, similar to here, the government sought protective orders under Rule 16(d)(1) and Section 4 of CIPA. In that case, the district court held a number of *ex parte, in camera* conferences with the government and an *ex parte, in camera* conference with defense counsel "to assist the court in deciding what information would be helpful to the defense." *Id.* 76-77. Ultimately, the district court "granted the motions in part and denied the rest." *Id.* at 76. That decision was subsequently affirmed. The Second Circuit's analysis is instructive.

The *Aref* Court first observed CIPA's purpose. "The statute was meant to 'protect[] and restrict[] the discovery of classified information in a way that does not impair the defendant's right to a fair trial.'" *Id.* at 78 (quoting *United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002)). It further observed that CIPA does not create a new governmental privilege. Rather, § 4 of CIPA "*presupposes* a governmental privilege against disclosing classified information. It does not itself *create* a privilege." *Id.* (emphasis in original; citations omitted). *See also United States v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989) (observing that § 4 of CIPA "creates no new rights of or limits on discovery of a specific area of classified information" but rather "contemplates an application of the general law of discovery in criminal cases to the classified information area with limitations imposed based on the sensitive nature of the classified information.").

As to the source of the governmental privilege in CIPA, the *Aref* Court concluded that the "most likely source for the protection of classified information lies in the common-law privilege against disclosure of state secrets." *Aref*, 533 F.3d at 78. It rejected a statement to the contrary in a report on CIPA prepared by the House of Representatives Select Committee on Intelligence. Finding the Committee's statement to be overly broad and unsupported by the three decisions it relied upon, it held that "the applicable privilege here is the state-secrets privilege." *Id.* at 79 (citing *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998)).

### 2. Government Privilege Must Give Way If Information Is "Relevant and Helpful" to the Defense

The privilege is not absolute. Citing other decisions involving application of the state-secrets privilege in a criminal case, the *Aref* court observed that "the privilege can be overcome when the evidence at issue is material to the defense." *Id.* It then observed that "[t]his standard is consistent" with that announced by the Supreme Court in *Roviaro v. United States*, 353 U.S. 53 (1957), "where the Supreme Court held in a criminal case that the Government's privilege to withhold the identity of a confidential informant 'must give way' when the information '<u>is relevant and helpful</u> to the defense of an accused, <u>or is essential to a fair determination of a cause</u>.'" *Id.* (quoting *Roviaro*, 353 U.S. at 60-61) (emphasis added). Accordingly, the Second Circuit "adopt[ed] the *Roviaro* standard for determining when the Government's privilege must give way in a CIPA case." *Id.* at 79-80.

Other Circuit Courts of Appeal addressing this issue have similarly concluded that, because the government-informant privilege at issue in *Roviaro* is analogous to the state-secrets privilege in CIPA, the *Roviaro* standard of "relevant and helpful to the defense"

should be adopted "for determining when the Government's privilege must give way in a CIPA case." *Id.* at 79-80. *See United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998); *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990) (observing that "CIPA was not . . . intended to expand the traditional rules of criminal discovery under which the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense"); *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989) (observing that "theoretical relevance in the face of the government's classified information privilege" is not enough; rather, "like a defendant seeking the informant's identity in *Roviaro*," a defendant in a CIPA case "is entitled only to information that is at least 'helpful to the defense of [the] accused'") (quoting *Roviaro*, 353 U.S. at 60-61); *United States v. Moussaoui*, 382 F.3d 453 (4th Cir. 2004) (observing that the Fourth Circuit has "adopted the standard articulated by the Supreme Court in *Roviaro*" for "determining whether the government's privilege in classified information must give way" and further observing that "[u]nder that standard, a defendant is entitled to disclosure of classified information upon a showing that the information 'is relevant and helpful to the defense . . . or is essential to a fair determination of a case'") (quoting *Roviaro,* 353 U.S. at 60-61); and *United States v. Pringle*, 751 F.2d 419, 427-28 (1st Cir. 1984) (affirming the district court's decision to issue protective orders under CIPA because, based on its review of the classified information, it agreed with the district court that the information "was not relevant to the determination of guilt or innocence of the defendants, was not helpful to the defense and was not essential to a fair determination of the cause"). This Court is of the opinion that the Sixth Circuit would adopt the "relevant and helpful to the defense" standard as well.

### 3. Application of *Roviaro* Standard in CIPA Context

Application of the *Roviaro* standard in the CIPA context is done in three steps.

First, "the reviewing court must find that the information crosses the low hurdle of relevance."  *United States v. Mejia*, 448 F.3d 436, 455 (D.C. Cir. 2006) (internal quotation marks and citation omitted).

Second, if the classified information is relevant, "the district court must then determine whether the state-secrets privilege applies because:  (1) there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged, and (2) the privilege is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer."  *Aref*, 533 F.3d at 80 (internal quotation marks and citations omitted).  This is generally accomplished "through the declaration of a United States government official who adequately describe[s] the reasons for the classification of the information and the harm to the national security that could result from disclosure."  *Abujihaad*, 2007 WL 2972623, at * 2 (citing cases).

Third, "[i]f the evidence is discoverable but the information is privileged, the court must decide whether the information is helpful or material to the defense, i.e., <u>useful to counter the government's case or to bolster a defense</u>."  *Aref*, 533 F.3d at 80 (internal quotation marks and citation omitted) (emphasis added).  To overcome the governmental privilege at issue here, the classified information must be at least helpful to the defense of the accused.  *Mejia*, 448 F.3d at 456.  To be helpful to the defense, "evidence need not rise to the level that would trigger" a duty to disclose under *Brady v. Maryland,* 373 U.S. 83 (1963).  *Aref*, 433 F.3d at 80.  "While *Brady* information is plainly subsumed within the larger

category of information that is 'at least helpful' to the defendant, information can be helpful without being 'favorable' in the *Brady* sense." *Mejia*, 448 F.3d at 456-57.[2]  In determining whether the classified information is "relevant and helpful to the defense," the court considers the classified information, "the crime charged, possible defenses, witnesses, and other relevant facts." *Abujihaad*, 2007 WL 2972623, at * 5.  See also *Roviaro*, 353 U.S. at 62.

The D.C. Circuit's decision in *Yunis* illustrates how to apply this three-prong test.  It is important that the Court carefully review the government's declaration and classified information and determine where the government's security interest lies.  In *Yunis*, the D.C. Circuit observed that the government's security interest was not in classified conversations but rather "in the time, place, and nature of the government's ability to intercept the conversations" and further observed that "a foreign counter-intelligence specialist . . . could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods."  867 F.2d at 623.  Reversing the district

---

[2]In *Mejia*, the D.C. Circuit makes several important caveats.

First, it observes that, "[b]ecause the classified information does not reach the threshold of being helpful to the defense," it did not "consider whether, if the information were helpful, it could nonetheless be withheld if the government's need to keep the information secret outweighed the defendant's interest in disclosure." 448 F.3d at 457 n.18 (internal quotation marks and citations omitted). It further observed that although it had not had the occasion to "endorse a balancing approach," other Circuit Courts of Appeal had done so.  *Id.*  (referencing *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) and *United States v. Smith*,  780 F.2d 1102, 1110 (4th Cir. 1985) (en banc)).

Second, for the same reason stated above, it found it unnecessary to decide "whether a defendant's interest in information that is helpful, but that does not rise to the level that is subject to disclosure under *Brady v. Maryland*, can overcome the government's interest in protecting properly classified information."  *Id.*

court's order requiring the government to provide defense counsel with classified information after redacting certain information, the D.C. Circuit determined that the district court's finding of relevance was "no more than theoretical" and concluded that "[n]othing in the classified documents in fact goes to the innocence of the defendant *vel non*, impeaches any evidence of guilt, or makes more or less probable any fact at issue in establishing any defense to the charges." *Id.* at 624. Even assuming relevance, the *Yunis* court determined that discovery was not proper because the classified information lacked the necessary "helpful or beneficial character" required for disclosure. *Id.*

Finally, if after applying this three-step test, the Court determines that the classified information is helpful to the defense, the Court should consider "the protective options short of full disclosure that are set forth in CIPA § 4, namely, permitting the government 'to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove.'" *Mejia*, 448 F.3d at 457 n.18 (quoting 18 U.S.C. App. III, § 4). *See also Abujihaad*, 2007 WL 2972623, at * 2 (observing that "[u]nder both § 4 of CIPA and Rule 16(d)(1)," even if the Court determines "that the classified materials in question contain properly discoverable information, a court may permit the Government to produce the discoverable information in a different form (redacted, for example) that would protect national security information, or may approve the substitution of unclassified summaries of properly discoverable information or a statement admitting relevant facts that the classified information would tend to prove.").

### III.   Application

With these legal principles in mind, and for the reasons stated below and at the *in camera, ex parte* hearing, the Court GRANTS the Government's motion for a protective order, brought pursuant to CIPA and Rule 16(d)(1), and prohibits the disclosure of certain classified information to the defense. Having reviewed the Government's brief, a classified declaration of a United States Government official, copies of the classified materials that the Government seeks to withhold from discovery and considering the crimes charged, the possible defenses, witnesses, evidence, and other relevant factors, the Court concludes that the classified information is not discoverable. Even if the classified information is presumed to be relevant, this Court finds that this information is privileged and not helpful or beneficial to the defense. The classified information is not discoverable under *Brady* because it is neither exculpatory nor impeaching. Rather, it falls on the inculpatory side of the equation. Moreover, most if not all of the information is already known to Defendant or is duplicative of information he already possesses and thus is not helpful to the defense. *See Abujihaad*, 2007 WL 2972623 at *5 (citing cases recognizing that there is "no need to disclose information already known to defendant"). In light of the above, the Court finds that the classified information that is the subject of the Government's motion is not essential to a fair determination of this case and does not satisfy the "relevant and helpful" standard applicable to motions brought pursuant to CIPA and Rule 16(d)(1).

**IV.   Conclusion**

For the above-stated reasons, the Government's motion for a protective order is GRANTED. The Government need not disclose to the defense the classified materials addressed in its motion. It is FURTHER ORDERED that the Government and the Court's Security Officer must preserve the classified materials under seal in their entirety in the

event of an appeal to the Sixth Circuit Court of Appeals.  *See* 18 U.S.C.A. App. 3 § 4; Fed. R. Crim. P. 16(d)(1).


        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated:  January 21, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 21, 2010, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager