UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ISSAM HAMAMA,

    Defendant.
_____/

NO. 08-20314

HON. NANCY G. EDMUNDS

**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND ORDER (1) GRANTING GOVERNMENT'S MOTION TO ADMIT ISS
DOCUMENTS [27] AND (2) DENYING DEFENDANT'S MOTION *IN LIMINE* [26]**

On June 3, 2008, a grand jury returned an indictment charging Defendant with one count of conspiracy to act as an agent of a foreign government, in violation of 18 U.S.C. §§ 371 and 951, two counts of making false statements on security clearance application forms, in violation of 18 U.S.C. § 1001, and one count of making false statements during an interview with FBI agents, in violation of 18 U.S.C. § 1001. On December 16, 2009, a grand jury returned a superseding indictment that contained a fifth count charging false statements.

On March 1, 2010, the government filed a motion to admit into evidence documents of the Iraqi Intelligence Service (IIS) that pertained to Defendant [27]. (Gov't Exhibit 1.) Defendant filed a motion to preclude the admissibility of the IIS documents on the ground that they could not be authenticated and were hearsay [26]. On June 1, 2010, the Court held a hearing on the parties' motions. At the hearing, the Court received into evidence several exhibits offered by the government. Defendant did not offer any exhibits. In

addition, the government proffered facts to establish that the IIS documents were both authentic and admissible as non-hearsay. Defendant did not proffer any facts to support his motion.

For the reasons discussed below, the Court GRANTS the government's motion to admit the IIS documents [27] and DENIES Defendant's motion *in limine* [26].

**A.     Factual Findings**

Based on the evidence presented by the government, which was essentially uncontested at the hearing, the Court makes the following findings of fact.[1]

    **1.     The Recovery of the IIS Documents**

Following the invasion of Iraq in 2003, the United States acquired documents in Iraq that belonged to the IIS and pertained to Defendant. (*See* Gov't Exhibit 1; 6/1/10 Hrg. Tr. at 4-5.) Some of these IIS documents were found by United States military forces operating in Iraq; others were obtained from an Iraqi opposition group operating in Iraq. (*Id.*)

    **2.     Robert Smego**

The government showed the IIS documents pertaining to Defendant to Robert Smego. From 1998 to 2003, Mr. Smego served in the U.S. Army, where he received

---

[1]Defendant's primary objection at the hearing was that the government proceeded by proffer, and Defendant did not have an opportunity to cross-examine the government's witnesses. (6/1/10 Hrg. Tr. at 26-27.) However, the Federal Rules of Evidence do not apply to the Court's determination of the admissibility of evidence. Fed. R. Evid. 104(a). Because the Rules of Evidence do not apply, the government was not required to call live witnesses. That said, the Court asked defense counsel at the hearing if he had "any reason to believe that they're [the government's witnesses] going to testify any differently from what the proffer is?" (*Id.* at 33.) Defense counsel replied "I don't know." (*Id.*)

2

training in the Arabic language and is now a fluent Arabic speaker.  (*Id.* at 6.)  From 2003 to the present, Mr. Smego has served as a contract employee for the U.S. Department of Defense as a document analyst.  (*Id.*)  As a Defense Department contractor, from 2003 to the present, Mr. Smego analyzed documents that had been recovered by the U.S. government in Iraq following the invasion of Iraq in March 2003, the majority of which were IIS documents.  (*Id.*)  Through his work as an Iraqi document analyst, the expert developed a method for recognizing counterfeit Iraqi government documents, and trained others in his methods.  (*Id.* at 7.)  In addition, Mr. Smego was hired by a subcommittee of the United States House of Representatives to translate and analyze tens of thousands of pages of Iraqi government documents pertaining to the United Nations Oil for Food Program.  (*Id.*)

In the course of his many years of experience, Mr. Smego has reviewed more than one million pages of Iraqi government documents, the majority of which have been IIS documents.  (*Id.*)  Of the more than one million pages reviewed by Mr. Smego, he has identified only 138 counterfeit Iraqi government documents.  (*Id.*)  These counterfeit documents were relatively easy to identify because the forgeries tended to be of a very poor quality.  (*Id.*)  Mr. Smego examined the original IIS documents that the government seeks to admit in this case and concluded that they are authentic.  (*Id.* at 8.)

Mr. Smego's opinion that the IIS documents were authentic was based in part on his recognition of different signatures on the IIS documents.  (*Id.* at 18.)  In Iraq, individuals often do not sign their name in a legible fashion, but use a unique swirl or a distinctive mark.  (*Id.*)  By studying such a large volume of IIS documents, Mr. Smego has seen repeated examples of signatures by the same IIS officers.  (*Id.*)  In this manner, Mr. Smego

3

is able to recognize authentic signatures on the IIS documents. (*Id.*) Mr. Smego also recognized the documents as authentic because they contained codes and routing information that accurately described the offices and components of the IIS that were communicating in the documents. (*Id.* at 17.) Mr. Smego also recognized distinctive stamps that were affixed to some of the documents as authentic stamps used by a unit of the IIS that was responsible for encrypting communications. (*Id.* at 25.)

On February 2, 2008, Mr. Smego testified before this Court in a similar case, *United States v. Shemami*, Case No. 07-20160, regarding the same general subject, namely the authenticity of IIS documents. (6/1/10 Hrg. Tr. at 5.) The Court had an opportunity to observe Mr. Smego testify and found him to be a credible witness.

### 3. Mohamed Al-Dani

The government also proffered the testimony of Mohamed Al-Dani, a former Iraqi Intelligence Service officer. (6/1/10 Hrg. Tr. at 8.) Mr. Al-Dani defected to the United States in the late 1990s. (*Id.*) Prior to his defection, Mr. Al-Dani worked for the IIS for approximately 20 years. (*Id.*) Mr. Al-Dani held various positions within the IIS, including working in the United States and working at the IIS headquarters in Baghdad, where he was responsible for overseeing Iraqi espionage in the United States. (*Id.*) Mr. Al-Dani has no personal knowledge of Defendant or his activities on behalf of the IIS. (*Id.*) Mr. Al-Dani, however, has reviewed the IIS documents that the government seeks to admit and has concluded that they are authentic. (*Id.*)

Mr. Al-Dani concluded that the ISS documents are authentic at least in part because many of the documents are communications between IIS offices which contain routing

information that accurately reflects the offices and components of the IIS that were communicating. (*Id.* at 17.)

Mr. Al-Dani also believes the IIS documents are authentic because certain documents bore the signature of individuals with whom Mr. Al-Dani worked at the IIS. For example, one of the documents the government seeks to admit, Exhibit 1.2, was written and signed by an individual named Jabar Hamza. (*Id.* at 19.) Mr. Al-Dani attended college with Hamza and worked with him at the IIS for almost all of Mr. Al-Dani's 20-year career there. (*Id.*) Mr. Al-Dani recognizes the signature on Exhibit 1.2 as being Hamza's signature. (*Id.*) Mr. Al-Dani also recognized a signature of another individual, Hamid Al-Jumely, on a ledger contained in Exhibit 1.47. (*Id.* at 23.) Al-Jumely was an IIS officer who worked at the Iraqi Interests Section in Washington, D.C. in the 1990s. (*Id.*) Defendant admitted in interviews with FBI agents that he had met with Al-Jumely. (*Id.*)

Mr. Al-Dani's conclusions were also supported by the fact that Mr. Al-Dani was able to recognize a payment receipt in Exhibit 1.47 that was printed on a standardized form produced by the IIS. (*Id.* at 21.) This standardized form was commonly used throughout the IIS and Mr. Al-Dani himself had used this standardized form on numerous occasions. (*Id.*)

Lastly, Mr. Al-Dani possesses familiarity of how the IIS collects and records information, based largely on his significant experience as an IIS officer. (*Id.* at 9.) Mr. Al-Dani believes that the IIS documents in this case are consistent with the way and manner in which the IIS would keep its records about the activities of its intelligence sources. (*Id.*)

As a result of his defection to the United States, Mr. Al-Dani received sizeable

benefits from the United States government, including both financial and non-financial benefits. *(Id.* at 9-10.) Moreover, Mr. Al-Dani testified in a federal criminal case, *United States v. Latchin*, Case No. 04-661, in 2006 in the Northern District of Illinois. (*Id.* at 10.) As is the case here, the purpose of Mr. Al-Dani's testimony in *Latchin* was to establish the authenticity of IIS documents. (*Id.*) Mr. Al-Dani testified in *Latchin* at a pre-trial hearing on the admissibility of the documents and at trial. During his testimony at the pre-trial hearing, Mr. Al-Dani made statements that the District Court judge found to be untruthful. (*Id.* at 11.) The District Court described those untruthful statements as tangential to the ultimate purpose of the hearing and stated, "[w]ith respect to the subject matter of the hearing, however, the authenticity of the files, Mr. Al-Dani was forthcoming and candid." (*Id.* at 13; Gov't Exhibit 5, *United States v. Latchin*, January 22, 2007 Order at 7-8). The District Court judge relied on Mr. Al-Dani's testimony as a basis for admitting the IIS documents at issue in *Latchin*. (Gov't Exhibit 5 at 14.)

    **4.    Mr. Sargon**

The government also showed the IIS documents it seeks to admit to another former IIS officer, Mr. Sargon. (6/1/10 Hrg. Tr. at 13.) Like Mr. Smego, Mr. Sargon testified before this Court in the *Shemami* case. (*Id.*) Mr. Sargon has approximately 20 years experience as an IIS officer and, among other positions, was at one time responsible for managing IIS activities inside the United States. (*Id.*) Mr. Sargon reviewed the IIS documents at issue in this case and concluded that they are authentic because Mr. Sargon recognized signatures in the documents and the formatting of the documents. (*Id.* at 14.)

### 5. Comerica Bank Records

Included in the IIS documents that the government seeks to admit is a disbursement receipt showing that code number 6129 was paid $250.75 on January 23, 2001 by the Embassy of Iraq in Washington, D.C. (6/1/10 Hrg. Tr. at 21.) Other IIS documents name Issam Hamama as code 6129. (*Id.*) Also found with the disbursement receipt was a receipt from a United States Post Office in Alexandria, Virginia. (*Id.* at 22.) The Post Office receipt shows that on January 23, 2001, a postal money order, number 02440416510, was purchased in the amount of $250. (*Id.*) A fee of 75 cents was charged to the purchaser. (*Id.*)

The government introduced records from Comerica Bank. (Gov't Exhibits 2 and 3.) These records include a copy of money order number 02440416510 issued by a U.S. Post Office in Alexandria, Virginia, on January 23, 2001, in the amount of $250 to Issam Hamama at his address in Sterling Heights, Michigan. (*See* Gov't Exhibit 2.) The back of the money order contains Defendant's handwritten endorsement. (Gov't Exhibit 2.) A deposit ticket belonging to Issam Hamama shows that the $250 money order was deposited into Defendant's Comerica bank account. (Gov't Exhibit 3.)

### 6. Characteristics of the IIS Documents

The IIS documents the government seeks to admit have distinctive characteristics that support their authenticity. For example, many of the IIS documents the government seeks to admit contain a unique stamp. (6/1/10 Hrg. Tr. at 25.) According to Mr. Smego, this stamp was affixed to documents by a unit at IIS headquarters in Baghdad responsible for encrypting communications. (*Id.*)

In other instances, the IIS documents cross reference each other. For example, Exhibit 1.17 makes reference to a document with serial number 59 that is dated April 13, 1997. (*Id.* at 24.) Exhibit 1.16 is a document bearing serial number 59 and it is dated April 13, 1997. (*Id.*) In this manner, Exhibit 1.17 corroborates the authenticity of Exhibit 1.16.

### 7. Testimony of the IMUN Employee

The government intends to call a witness at trial who is a former employee of the Iraqi Mission to the United Nations in New York, New York. This witness would testify that he observed Defendant meet with Jabar Hamza, an IIS officer, on numerous occasions during the 1990s.

### 8. Defendant's Admissions

Included in the IIS documents that the government seeks to admit is a handwritten letter by Defendant to the Iraqi Foreign Minister in which Defendant stated that he was "a core nationalist and true Iraqi," who has been "fatefully united with the journey of the mighty Ba'ath revolution in the past and the future without any hesitation or wavering." (Gov't Exhibit 1.3.) Defendant stated that he would "defend Iraq with care and high enthusiasm," and that he would "fight at the informational and political front." Defendant's letter also offered to help opposition parties reconcile with the Iraqi government. Defendant claimed that this reconciliation would "reinforce the structure of the revolutionary regime in Iraq," and "weaken the size and influence and activity of the betraying and dissenting Iraqi forces." During an interview with FBI agents, Defendant was shown a copy of the letter and acknowledged writing it. Defendant also admitted to knowing Jabar Hamza and Hamid Al-Jumely, both of whom are IIS officers who were stationed in the United States and whose

8

signatures appear in the IIS documents the government seeks to admit.

**B.     Conclusions of Law**

**1.     The IIS Documents Meet the Authenticity Requirement**

A document can be admitted into evidence only after it has been authenticated, a requirement that "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). The authenticity inquiry "turns on whether the document is what it purports to be, not its veracity." *United States v. Mandycz*, 447 F.3d 951, 966 (6th Cir. 2006) (internal quotation marks and citation omitted). As the Sixth Circuit has explained, the government faces a relatively low hurdle here: "Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document is authentic." *United States v. Thomas*, No. 90-3289, 1990 WL 212541, *4 (6th Cir. Dec. 21, 1990) (quoting *United States v. Jardina,* 747 F.2d 945, 951 (5th Cir. 1984)).

Evidence can be authenticated "in two ways:  a chain of custody . . . or alternatively, other testimony could be used to establish the accuracy and trustworthiness of the evidence." *United States v. DeJohn*, 368 F.3d 533, 542 (6th Cir. 2004) (internal quotation marks and citation omitted).  Federal Rule of Evidence 901(b)(1) and (b)(4) specifically provide that a document's authenticity can be established by "testimony of [a] witness with knowledge," of the document's "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."  Non-expert opinion testimony about "the genuineness of handwriting" is also an acceptable means to

9

establish authenticity. Fed. R. Evid. 901(b)(2).

The government has made out a *prima facie* case for the authenticity of the IIS documents it seeks to admit. The government has proffered the testimony of an expert in IIS documents, Mr. Smego, and two former Iraqi government officials, Mr. Al-Dani and Mr. Sargon, who recognize authentic signatures, stamps and other symbols in IIS documents. Defendant himself has authenticated the documents by admitting that he wrote the handwritten letter that was found in the IIS documents. The circumstances surrounding the discovery of the documents – the seizure of the documents by United States military and opposition forces in Iraq – supports their authenticity. Moreover, some of the receipts contained in the IIS documents have been corroborated by records obtained from Comerica Bank. *United States v. Dumeisi*, 424 F.3d 566, 575 (7th Cir. 2005) (determining that IIS documents were authentic based on the government's evidence concerning the documents' "distinctive characteristics" and the "circumstances surrounding discovery").

In sum, the IIS documents that the government seeks to admit are sufficiently authentic to be presented to the jury. Defendant, of course, will have an opportunity at trial to contest the authenticity of the documents through cross-examination of the government's witnesses or by calling his own witnesses.

### 2. The IIS Documents are Not Hearsay

A statement is not hearsay if it is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). "[T]he government must show by a preponderance of evidence that a conspiracy existed, that the defendant was a member of the conspiracy, and that the statement was made in the course

10

and furtherance of the conspiracy." *United States v. Lopez-Medina*, 461 F.3d 724, 746 (6th Cir. 2006). This Court is permitted to consider the IIS documents themselves in determining whether a conspiracy existed, but the government cannot rely solely on the IIS documents to meet its burden. *Id.*

As alleged in the superseding indictment, the members of the conspiracy in this case included Defendant and other individuals who worked for the IIS. The object of the conspiracy was for Defendant to act as an agent of the Iraqi government. To further this conspiracy, the IIS created documents detailing Defendant's activities and the relationship between Defendant and the IIS. These documents are compelling evidence that the conspiracy existed and that the documents contained in Exhibit 1 were made in furtherance of the conspiracy.

The Court's conclusions are supported by the Fourth Circuit's decision in *United States v. Squillacote*, 221 F.3d 542, 563-64 (4th Cir. 2000), where documents belonging to a foreign country's intelligence service were admitted as co-conspirator's statements under Rule 801(d)(2)(E). The defendants in *Squillacote* were charged with various offenses related to their espionage activities on behalf of East Germany ("GDR") and other countries. At trial, the government introduced documents "that the government purchased . . . from unidentified sources." *Id.* at 564. The documents were created by East Germany's intelligence service and they contained information about the defendants' addresses, their code names, and the operations to which the defendants were assigned. *Id.* at 552. The district court admitted the documents under Rule 801(d)(2)(E) as co-conspirator statements. *Id.* at 563. On appeal, the Fourth Circuit affirmed the admission

11

of the documents. The court of appeals found that the documents were created during the course of the conspiracy and that "there can be no real dispute that, by compiling the information contained in the disputed documents – the Appellants' real and code names, their addresses, the object of their assignments, how they could be contacted – the GDR was acting in furtherance of the conspiracy." *Id.*

The government does not rely solely on the IIS documents to establish that a conspiracy existed. The government also relies on Defendant's own statements to the FBI. In those statements, Defendant admitted to writing the handwritten letter that was found among IIS documents in Iraq. In that letter, Defendant offered to help the Iraqi government deal with opposition groups. Defendant claimed that this reconciliation would "reinforce the structure of the revolutionary regime in Iraq," and "weaken the size and influence and activity of the betraying and dissenting Iraqi forces." (Gov't Exhibit 1.3.) In addition, Defendant admitted to knowing and meeting with co-conspirators Jabar Hamza and Hamid Al-Jumely, both of whom were IIS officers. All of these admissions corroborates the existence of the conspiracy. *Squillacote*, 221 F.3d at 563 (determining that East German intelligence documents were admissible as coconspirator's statements partly because the documents were corroborated by the defendants' own statements to an undercover FBI agent).

In addition, the conspiracy is corroborated by the testimony of a former employee at the IMUN that, on numerous occasions, Defendant met with Hamza. The same can be said of the Comerica Bank records, which confirm that Defendant received payments from the IIS and deposited them into his personal bank account.

All of these facts support the conclusion that the government has met its initial burden of establishing by a preponderance of the evidence that a conspiracy existed and that the IIS documents were made in the course and furtherance of the conspiracy. The IIS documents are therefore admissible as non-hearsay co-conspirator statements under Rule 801(d)(2)(E). Of course, the ultimate question of whether such a conspiracy existed is reserved for the jury at trial.

### 3. The IIS Documents Fall Under the Residual Hearsay Exception

The Court also finds that the IIS documents qualify for admission under the residual hearsay exception contained in Federal Rule of Evidence 807. Rule 807 permits the admission of an out-of-court statement if it has "circumstantial guarantees of trustworthiness." To be admissible under Rule 807, the statement must be offered as evidence of a material fact, be more probative than any other evidence available through reasonable efforts, and the interests of justice will be served by the admission of the evidence. The Court believes that the testimony of Mr. Smego, Mr. Al-Dani, and Mr. Sargon provide sufficient guarantees of the trustworthiness of the IIS documents for purposes of admission under Rule 807. In addition, the corroboration of the documents by Defendant's statements to the FBI and the Comerica bank records further supports a finding of trustworthiness. *Dumeisi*, 424 F.3d at 576 (determining that certain IIS documents qualify for admission under residual hearsay exception because testimony of former IIS official and testimony that handwriting in documents belonged to the defendant provided sufficient indicia of reliability). The Court also finds that the IIS documents are evidence of a material fact, are more probative than any other evidence available through

13

reasonable efforts, and further finds that the interests of justice will be served by their admission.

**C.     Conclusion**

For the above-stated reasons, the Court GRANTS the government's motion to admit the IIS documents as contained in Gov't Exhibit 1 and DENIES Defendant's motion *in limine*.

**IT IS SO ORDERED.**


                              s/Nancy G. Edmunds
                              Nancy G. Edmunds
                              United States District Judge

Dated:  June 30, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 30, 2010, by electronic and/or ordinary mail.

                              s/Carol A. Hemeyer
                              Case Manager